IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOSEPH GONZALES, )<br>)<br>Movant, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Case No. 07-0449-CV-W-ODS<br>Crim. No. 03-00378-07-CR-W-ODS |

ORDER AND OPINION DENYING MOTION FOR POSTCONVICTION RELIEF

I.  BACKGROUND

Movant, along with seven others, was charged with a variety of drug and firearm offenses.  After a trial, the jury convicted Movant on one count each of (1) conspiring to distribute 500 or more grams of cocaine and 100 kilograms or more of marijuana, (2) possessing 500 grams or more of cocaine with the intent to distribute, (3) possessing 100 kilograms or more of marijuana with the intent to distribute, and (4) possessing a firearm in furtherance of a drug transaction.  The conviction was affirmed on appeal. United States v. Ruiz, 446 F.3d 762 (8th Cir. 2006), cert. denied, 127 S. Ct. 1027 (2007).

Movant then initiated this proceeding under 28 U.S.C. § 2255, seeking post-conviction relief.  After briefing was completed, the Court appointed counsel and set a hearing on some of Movant's claims.  After considering the evidence presented at the hearing and the parties' written and oral arguments, the Court concludes Movant is not entitled to post-conviction relief.

II.  DISCUSSION

All of Movant's claims assert his trial counsel provided ineffective assistance. These claims are governed by the standard set forth in Strickland v. Washington, 466

U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

### A. The Minimum Sentence and the Potential for a Plea

Movant contends his attorney did not properly advise him of the minimum sentence he faced, which prevented Movant from properly considering the possibility of pleading guilty to the charges. The Court concludes that even if counsel failed to properly advise Movant of the minimum sentence he faced, Movant was not prejudiced by that failure.

To understand the context of this issue, it is important to understand the sentencing exposure Movant faced. Ordinarily, the statutorily-mandated minimum sentence on the three drug counts would have been five years, and in all likelihood

2

those sentences would have run concurrently. Congress has mandated a five year consecutive sentence for the gun charge, so ordinarily the minimum total sentence would have been ten years. However, the Government filed a Notice pursuant to 21 U.S.C. § 851, which enhanced the minimum sentence on the drug counts to ten years because of Movant's prior felony drug conviction. When combined with the mandatory five year consecutive sentence for the gun charge, the Government's invocation of section 851 effectively made Movant's minimum sentence fifteen years.

Movant contends his attorney did not properly advise him about the existence or practical impact of the Government's notice – but he is unable to establish he was prejudiced because he received the minimum sentence permitted under the law. Assuming, *arguendo*, that Movant was deprived of accurate information, there was nothing he could do to avoid the minimum sentence.

Movant intimates the possibility the Government might have softened its position if he plead guilty, but even a guilty plea would not have improved his situation or lessened his sentence. In this regard, Movant originally contended his attorney failed to communicate a plea offer of eight years. At the hearing, Movant clarified that he knew the Government never made a bona fide offer of eight years, but the preliminary discussions demonstrated that he could have reached some sort of an agreement with the Government that would have decreased his sentencing exposure. The Record does not support Movant's position.

Movant's trial attorney, Gregory Vleisides, initiated conversations with the Government about the possibility of a plea agreement. These conversations occurred without Movant's prior knowledge; in fact, Movant previously told Vliesides that he would not accept a plea. Nonetheless, conversations took place and Government attorneys told Vleisides that an "absolute prerequisite" to any agreement would be cooperation by Movant with respect to matters beyond his case. Vleisides reported the results of these preliminary conversations to Movant, but Movant professed to not having any knowledge or information that would be of use to the Government. Then, and now, Movant professes to not even having advance knowledge about the crimes he was found guilty of committing (although he admitted to suspecting something illegal

3

was happening). Vleisides returned to the Government to explore the possibility of a plea agreement that did not involve Movant's cooperation, but the Government was not interested in such an arrangement.

These facts confirm Movant was not deprived of an opportunity to bargain for a sentence less than the statutory minimum. The Record does not support the existence of an agreement or offer from the Government to do anything to reduce the applicable statutory minimum. Any such agreement was speculative, and certainly dependant upon Movant's cooperation in other cases – but no such cooperation was forthcoming, and Movant continues to declare that he could not have provided the type of information the Government was requiring. In the absence of either (1) an action Movant could have taken unilaterlly to reduce the statutory minimum or (2) the existence of a bona fide offer from the Government that could reduce the statutory minimum, Movant suffered no prejudice under <u>Strickland</u>.[1]

### B. "Opening the Door"

Before trial, the Court issued an Order in Limine that, *inter alia*, precluded the Government from offering evidence of Movant's prior conviction for possessing marijuana with the intent to distribute. At trial, Special Agent James Cheatham testified that the odor of marijuana emanated from one of the boxes unloaded by defendants. Tr. at 401-03. During cross-examination, Vleisides inquired about a person's ability to identify the odor as marijuana and the need for such a person to have had prior experience with or exposure to the smell of marijuana. Tr. at 422-24. Later, the Government suggested that Vleisides' questions suggested Movant did not know what marijuana smelled like, so he had "opened the door" to introduction of Movant's prior conviction. Movant now contends Vleisides' questions constituted ineffective assistance because they formed the groundwork for admission of his prior conviction.

---

[1]Movant has also suggested the possibility that he could have unilaterally pleaded guilty on a theory of "willful blindness" or pleaded nolo contendere. Even if these observations are true, they would not have altered the statutory minimum sentence.

4

Movant's characterization of events is not entirely correct. While it is true that the Government contended Vleisides' questions opened the door to admission of Movant's prior conviction, this is not what the Court decided. The Court ruled as follows:

> Let me be clear about that. I don't think that Mr. Vleisides' cross-examination opened the door. I think it is the fact that his defense and probably the only defense that is available to him, that is lack of knowledge or intent[,] is the door opener here. And I am going to allow that 404(b) evidence in. I will instruct the jury as to the uses to which that evidence may be used once it's offered.

Tr. at 434. The cross-examination of Agent Cheatham did not violate Strickland.

### C. Ineffective Assistance of Counsel on Appeal

Movant contends his appellate counsel provided ineffective assistance in failing to challenge the evidence supporting his knowledge, his intent, and the existence of a conspiracy. The Eighth Circuit's opinion demonstrates the issues were raised on appeal – the Court of Appeals simply rejected the challenge. Moreover, Movant's arguments do not explain what appellate counsel should have done differently. He argues extensively against the sufficiency of the evidence, but does not explain how the representation fell short of the standards established in Strickland.

### III. CONCLUSION

For these reasons, the motion for postconviction relief is denied.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: October 8, 2008　　　　　　　　　UNITED STATES DISTRICT COURT